UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HELLENIC INVESTMENT FUND, INC., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-04-3010 |
| | § | |
| DET NORSKE VERITAS, *et al*., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Defendants have filed a Motion to Dismiss Based on Forum Selection Clause (Doc. #8).[1]  For the reasons that follow, the Motion is GRANTED and the case is DISMISSED.

## I.  BACKGROUND

This litigation arises from the issuance of a Classification Certificate[2] by Defendant Det Norske Veritas ("DNV") to Plaintiff Hellenic Investment Fund, Inc. ("Hellenic").  In particular, the M/V MARIANNA, a Liberian flagged bulk carrier owned by Inlet Navigation, Ltd. ("Inlet"), was entered into class, and maintained in class, by DNV based upon inspections and surveys conducted by DNV's surveyors.  As a result of such surveys and inspections, Class Status Reports, Confirmation of Class Certificates, and Classification Certificates were issued concerning the M/V MARIANNA's condition and her seaworthiness.

Pursuant to a Memorandum of Agreement ("MOA"), Inlet agreed to sell the M/V MARIANNA to Hellenic.  Under Clause 17 of the Appendix to the MOA, one of the conditions of sale was that the M/V MARIANNA must maintain her class, free of recommendations adversely affecting her class.  Clause 17 also provided that all of the M/V MARIANNA's class and trading

---

[1] Two of the defendants, Det Norske Veritas (U.S.A.), Inc. and Det Norske Veritas Certification, Inc. offer unrefuted evidence that they are not involved in ship classification services generally and that they had no involvement with Plaintiff's vessel.  Accordingly, they are entitled to be dismissed independent of the forum selection clause.
[2] The system and pertinent procedures of classification societies are set forth in an opinion by Judge Calabresi in *American Bureau Shipping v. Tencara Shipyard S.P.A*., 170 F.3d 349, 351 (2d Cir. 1999).

certificates (national and international) were to be, on delivery, clean, valid, and unextended for six months.

At the request of the M/V MARIANNA's owners, representatives of DNV conducted surveys of the vessel. Also at the request of the M/V MARIANNA's owners, additional surveys were undertaken by a DNV-approved surveyor/representative. As a result of these surveys, a clean Confirmation of Class Certificate was eventually issued to Inlet. The Confirmation of Class Certificate certified that, immediately prior to the turnover of the vessel to Hellenic, the M/V MARIANNA was reasonably fit for her intended use and that there were no conditions of class recorded against her.

The sale was then completed, and Hellenic renamed the M/V MARIANNA the M/V TRANQUILITY. All of the events described took place in Houston. After the purchase and renaming, the M/V MARIANNA's certificates were amended by the class surveyor to reflect the new ownership and name of the vessel.

Hellenic contends that its problems started almost immediately following the sale and renaming of the vessel, when condition surveyors from P&I Club conducted surveys and inspections of the vessel. According to Hellenic, the P&I condition surveyors discovered numerous defects and deficiencies that had not properly been discovered and reported by DNV. Hellenic further contends that the discovery of these defects and deficiencies materially impacted Hellenic's ability to obtain P&I Club cover for the M/V TRANQUILITY's next two voyages, one of which was imminent, as the cargo was scheduled soon to be loaded.

The M/V TRANQUILITY did make two short voyages while maintained in class by DNV. While at port in Montreal, however, a Port State Control Order was issued against the vessel due to defects and deficiencies apparently discovered by Port State Control representatives. Subsequently, as a result of inspections and surveys by DNV surveyors in Montreal, a Port State Control Detention Report was issued. Hellenic alleges that these defects and deficiencies existed prior to, and at, the

time DNV conducted its surveys in Houston immediately prior to the sale. The M/V TRANQUILITY was subject to an arrest and, because its owners could not post the required bond, it was sold.

## II.  DISCUSSION

Hellenic filed suit against DNV seeking recovery for tortious misrepresentation, arguing that — but for the assurances from DNV as to the seaworthy condition of the vessel — Hellenic would not have consummated its MOA with Inlet. DNV filed its Motion to Dismiss, arguing that the Classification Certificate upon which Hellenic allegedly relied states that it is "[i]ssued under the Provisions of the Rules of" DNV. Those Rules contain forum selection and choice of law provisions that require that any disputes be brought in the Municipal Court in Oslo, Norway and be decided pursuant to Norwegian law. Hellenic responds that its Complaint carefully avoided any reference to breach of contract, that the tortious conduct by DNV occurred before there was any contractual relationship between DNV and Hellenic, and that Hellenic cannot properly be considered to have been subject — at the pertinent time — to a theory of implied contract, third party beneficiary, or estoppel.

Counsel for both sides have advanced intelligent and insightful arguments, both in their writings and at oral argument. The Court finds surprising the dearth of case law dealing with what, it would seem, is a not uncommon set of facts.

Hellenic's contention that it should not be bound by DNV's Rules as to conduct occurring prior to the consummation of the sale has plausibility. Indeed Hellenic insists that, although DNV had been the classified society for the vessel in the past, it had no knowledge and no preference as to whether DNV or another classification society was to be used to consummate the sale.

As developed in oral argument, however, the MOA clearly contemplated DNV as the classification society. The language of the MOA would necessarily have put Hellenic on notice that DNV would be issuing the required Certificates, unless Hellenic properly requested an alternate society. If Hellenic was on notice that DNV would be issuing the certification necessary for the

consummation of the sale, upon which Hellenic planned to rely, then it certainly would know that it should inquire further as to applicable rules and regulations of the society. Whether Hellenic's claim for relief sounds in contract or tort, the operative language in DNV's Rules — which refers to "any dispute" — requires Hellenic to seek relief in Municipal Court in Oslo, subject to Norwegian law.

## III.   CONCLUSION

The Court reaches this conclusion reluctantly. Hellenic may have meritorious claims, and this Court has no knowledge whether those claims can be pursued cost-effectively, or at all, so far from the venue of the salient events and relevant witnesses. Nonetheless, this is not one of those rare cases in which an otherwise valid forum selection clause should be vitiated as "unreasonable under the circumstances" per *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 10, 12-13 (1972). The Motion to Dismiss (Doc. #8) is GRANTED.

IT IS SO ORDERED.

SIGNED this 19th day of July, 2005.

Keith P. Ellison
United States District Judge

TO INSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS

ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY

**AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN**

**SENT ONE BY THE COURT.**